(101 So. 517)

## UNION CEMETERY CO. v. HARRISON. (6 Div. 269.)

(Court of Appeals of Alabama. Oct. 7, 1924.)

1. **Nuisance ⬤�inline5—Every man must so use his property as not to interfere with his neighbor's.**

Law of nuisance rests on common-law maxim that every man must so use his property as not to interfere with that of his neighbor.

2. **Nuisance ⬤⟿4—"Nuisance" defined.**

Anything constructed on defendant's premises, which, of itself or by its intended use, directly injures neighbor in proper use and enjoyment of his property, is a "nuisance."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Nuisance.]

3. **Nuisance ⬤⟿44—Owner of leasehold interest, as well as fee-simple title, protected.**

Owner of leasehold interest, as well as of fee-simple title, is protected from injury in proper use and enjoyment of his property by anything constructed on another's premises.

4. **Nuisance ⬤⟿3(3)—Right to pure air entitled to protection.**

Right to pure air is incident to ownership of land, and entitled to same protection as any other valuable right.

5. **Nuisance ⬤⟿3(7)—Cemetery may become nuisance in fact.**

Cemetery or place for disposal of dead is not nuisance per se, but particular place of sepulture may become nuisance in fact, depending on location and extent of grounds, as well as mode of burial.

6. **Nuisance ⬤⟿3(7)—Cemetery from which noxious odors issue to discomfort of another nuisance in fact.**

Cemetery, so conducted that noxious, deleterious, and disagreeable odors issue therefrom, to discomfort of another in use of his premises, is nuisance in fact.

7. **Nuisance ⬤⟿48—Averments of negligence producing nuisance may be disregarded as surplusage.**

Injurious consequences of nuisance, rather than act producing it, being cause of action,

averments of defendant's negligence may ordinarily be disregarded as surplusage.

**8. Pleading ⬦8(20)—Averments of complaint for damages from nuisance held not mere conclusions.**

In action for damages from nuisance, averments that noxious, unhealthful, disagreeable, and offensive odors, issuing from defendant's premises, polluted air around and in plaintiff's dwelling, rendering it unpleasant, uncomfortable, unhealthful, and unfit for human habitation, with resulting damages stated, *held* not mere conclusions.

**9. Nuisance ⬦48—Complaint for damages held demurrable, as not averring noxious odors emanated from defendant's cemetery and during its ownership thereof.**

Counts of complaint, in action for damages from nuisance, *held* demurrable, as not showing, except by implication or intendment, that noxious odors emanated from defendant's cemetery, nor that plaintiff's occupancy of premises near cemetery was during defendant's ownership and control of latter.

**10. Evidence ⬦493 — Plaintiff's nonexpert testimony as to effect of noxious odors from defendant's cemetery on plaintiff's wife held inadmissible.**

In action for damages from nuisance, plaintiff's nonexpert testimony as to effect of alleged odors, smells, and stenches from defendant's cemetery on his wife, *held* inadmissible, though he might show that she became ill, and by expert testimony that noxious odors were calculated to produce such result; whether illness was so caused being for jury.

**11. Nuisance ⬦49(2)—Evidence that another in same neighborhood was ill held inadmissible.**

In an action for damages from nuisance, evidence that another living in same neighborhood was ill, *held* improperly admitted, as injecting collateral fact without value, until her illness was shown to have resulted from nuisance.

**12. Evidence ⬦542—Physician's testimony as to tendency of cemetery to allow escape of noxious vapors and fumes held inadmissible.**

Physician, not shown to have had any experience in keeping cemeteries, could not testify whether kind of burying ground which he inspected would have tendency to allow escape of noxious vapors and fumes from dead bodies.

**13. Nuisance ⬦50(1)—Measure of damages from maintaining cemetery stated.**

Measure of damages from maintenance of cemetery, causing noxious and unhealthful odors to plaintiff's injury in enjoyment of dwelling, is value of time lost in attending members of his family made ill thereby, money expended or liabilities incurred for medicine and medical attention, value of wife's lost services, mental and physical annoyance and suffering, diminished rental value of premises during term of lease, and, if nuisance was maintained in wanton disregard of plaintiff's rights, jury may award punitive damages.

**14. Evidence ⬦538—City sanitary department inspector held not qualified to state whether bodies were buried at proper depth.**

Chief inspector of city sanitary department, who had no experience in burial of dead, *held* not qualified to answer question whether bodies in cemetery from which noxious odors were alleged to emanate were buried at proper depth.

**15. Nuisance ⬦49(2)—Expert opinion as to sanitary conditions where witness examined premises complained of held material.**

Expert opinion at time of trial of action for damages from nuisance, not at some past date, as to whether cemetery, from which noxious odors were alleged to emanate, was sanitary when witness examined it, *held* material inquiry.

Appeal from Circuit Court, Jefferson County; Roger Snyder, Judge.

Action for damages by Henry Harrison against the Union Cemetery Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Counts 1 and 2 of the complaint as amended are as follows:

"Plaintiff claims of the defendant, a corporation, the sum of $10,000 as damages for the maintenance of a nuisance, for that on, to wit, the 1st day of August, 1921, and for a long time subsequent thereto, the defendant owned and operated a cemetery, graveyard, or burial ground, located in the northwest quarter of the southeast quarter of section 16, township 17, range 2 west, in Jefferson county, Ala., for the burial of negroes; that the plaintiff with his family occupied a dwelling house near to said cemetery, graveyard, or burial ground. The plaintiff avers that the defendant did so negligently operate said cemetery, graveyard, or burial ground that noxious, unhealthful, damaging, disagreeable, and offensive odors were proximately allowed or caused to reach the dwelling house of the plaintiff and his wife, and plaintiff avers that as a proximate consequence thereof, his said dwelling house was rendered unpleasant, uncomfortable, unhealthful, and unfit for human habitation, and that the plaintiff was proximately caused to suffer great mental and physical pain, discomfort, and annoyance, and that his health was injured and impaired as a result thereof, and plaintiff's said dwelling was rendered uncomfortable, unpleasant, unsanitary, and unfit for plaintiff as a residence."

Count 2:

"Plaintiff claims of the defendant, a corporation, the further sum of $10,000 as damages for the maintenance of a nuisance, for that on, to wit, the 1st day of August, 1921, and for a long time subsequent thereto, the defendant corporation owned, conducted, and operated a cemetery or burial ground, located in the northwest quarter of the southeast quarter of section 16, township 17, range 2 west, in Jefferson county, Ala., for the burial of negroes. Plaintiff avers that the servants, agents, or employees of defendant, acting in the line and scope of their employment as such, did inten-

tionally, knowingly, and wrongfully cause or allow dead bodies buried in said cemetery or burial ground to be exposed for a long time, in a decaying and decomposed condition; that said servants, agents, or employees, acting in the line and scope of their employment as such as aforesaid, did intentionally, knowingly, and wrongfully fail to bury dead bodies a sufficient depth in the ground, but buried said bodies at a grossly insufficient depth, to wit, 14 inches. Plaintiff avers that he and his family occupied a dwelling house near said cemetery or burial ground; that as a proximate consequence of the wrongs aforesaid the said dwelling house was rendered unhealthful, uncomfortable, and unsanitary and unfit for human habitation, by reason of and as a proximate consequence of odors, stench, and other unhealthful, uncomfortable and disagreeable emanations or gases arising from said cemetery or burial ground; that the plaintiff was rendered sick and sore, suffered great mental and physical pain, and his health was injured and impaired; that plaintiff's wife was rendered sick and sore, and that as a proximate consequence thereof the plaintiff lost her services and consortium; that plaintiff was put to great expenses in and about the treatment of his said wife and himself, for medicine and medical attention. Hence this suit, and plaintiff claims punitive damages."

Beddow & Oberdorfer, of Birmingham, for appellant.

It is not enough to aver a mere conclusion that the thing complained of is a nuisance. Ex parte Ashworth, 204 Ala. 391, 86 So. 84; Whaley v. S.-S. S. & I. Co., 164 Ala. 216, 51 So. 419, 20 Ann. Cas. 822. Time must be alleged or the complaint is demurrable. Tallassee Falls Mfg. Co. v. Bank, 159. Ala. 315, 49 So. 246; Mobile v. Bay Shore Co., 158 Ala. 622, 48 So. 377; Williams v. McKissick, 125 Ala. 544, 27 So. 922; Shipman's Com. L. Pl. (2d Ed.) 389. A layman cannot give the effect upon a human body of gases, etc. Cummins v. State, 58 Ala. 387; Jones on Evi. § 359; Birmingham Waterworks v. Ferguson, 164 Ala. 494, 51 So. 150; Hames v. Brownlee, 63 Ala. 277; Montgomery Co. v. Varner, 19 Ala. 186; C. of G. v. Clements. 2 Ala. App. 520, 57 So. 52. Evidence that others were made sick by the odors from the cemetery was inadmissible. South Ry. v. Wood, 72 Ala. 451; Supreme Lodge v. Baker, 163 Ala. 518, 50 So. 958; 10 R. C. L. 928. A physician may give his opinion only of matters upon which he has qualified as an expert. 17 Cyc. 41. Witnesses Latham and Dowling should have been permitted to testify whether the bodies in the cemetery were buried at proper depth and whether the place was sanitary nor not. L. & N. v. Lovell, 196 Ala. 94. 71 So. 995; Sloss Co. v. Thomas, 202 Ala. 231, 80 So. 69; Sloss Co. v. Reid, 184 Ala. 647, 64 So. 334; Williamson Iron Co. v. McQueen, 144 Ala. 265, 40 So. 306; 17 Cyc. 232.

Allen & McEwen, of Birmingham, for appellee.

The complaint was sufficient. Bigbee Fert. Co. v. Scott, 3 Ala. App. 333, 56 So. 834; Simonetti v. Carlton, 17 Ala. App. 105, 82 So. 553; Macher v. Farmers', etc. Co., 203 Ala. 601, 84 So. 845. Evidence by plaintiff as to the illness of his wife was admissible. Shelby Ir. Co. v. Greenlea, 184 Ala. 496, 63 So. 470; Steel City Co. v. Jenkins, 17 Ala. App. 221, 84 So. 408; Birmingham W. W. v. Martini, 2 Ala. App. 652, 56 So. 831; Jeff. Fert. Co. v. Rich, 182 Ala. 633, 62 So. 40; Tutwiler Co. v. Nichols, 145 Ala. 666, 39 So. 762.

BRICKEN, P. J. This is an action on the case by the appellee against the appellant to recover damages alleged to have resulted from a nuisance. There was a verdict and judgment for the plaintiff, and the defendant appealed.

The plaintiff's theory, as indicated by the pleadings and proof, is that noxious and disagreeable odors arising from a cemetery conducted by the defendant polluted the atmosphere about his residence to his injury and discomfort.

[1] The whole law of nuisance rests upon the maxim of the common law; "Sic utere tuo alienum non lædas"—every man must so use his own property as not to interfere with that of his neighbor. Farris & McCurdy v. Dudley, 78 Ala. 127, 56 Am. Rep. 24; Kinney v. Koopman & Gerdes, 116 Ala. 310, 22 So. 593, 37 L. R. A. 497, 67 Am. St. Rep. 119.

[2, 3] "Anything constructed on a person's premises, which, of itself or by its intended use, directly injures a neighbor in the proper use and enjoyment of his property, is a nuisance." Grady v. Wolsner, 46 Ala. 381, 7 Am. Rep. 593; Hundley v. Harrison et al., 123 Ala. 292, 26 So. 294. And the principle is for the protection of one having a leasehold interest who suffers injury therefrom, as well as the holder of a fee-simple title. Hosmer v. Republic I. & S. Co., 179 Ala. 415, 60 So. 619, 43 L. R. A. (N. S.) 871; 20 R. C. L. 459, par. 76; Code 1907, § 5193; First Ave. Coal & Lumber Co. v. Johnson, 171 Ala. 470, 54 So. 598, 32 L. R. A. (N. S.) 522.

[4] The right to pure air is incident to the ownership of land, and is entitled to the same protection as any other valuable right. "No man has a right to interfere with the supply of pure air that flows over another's land, any more than he has to interfere with the soil itself." Romano et al. v. B. R., L. & P. Co., 182 Ala. 335, 62 So. 677, 46 L. R. A. (N. S.) 642, Ann. Cas. 1915D, 776; 20 R. C. L. 421, par. 36.

[5] "A cemetery or place for the disposal of the dead is not, according to the decided weight of authority, considered a nuisance per se, but a particular place of sepulture may become a nuisance as a matter of fact. The location and extent of grounds, as well as the mode of burial, are facts to be con-

sidered in determining the character. of such place." 20 R. C. L. 411, par. 28; Kingsbury v. Flowers, 65 Ala. 479, 39 Am. Rep. 14.

[6] If a cemetery is so conducted that noxious, deleterious, and disagreeable odors issue therefrom to the discomfort of another in the use of his premises, it is a nuisance in fact. Hundley v. Harrison, 123 Ala. 292, 26 So. 294; Romano et al. v. B. R., L. & P. Co., supra; Belview Cemetery Co. v. McEvers, 168 Ala. 535, 53 So. 272; Bryan v. Birmingham, 154 Ala. 447, 45 So. 922, 129 Am. St. Rep. 63.

[7] The complaint in this case, as last amended, consists of counts 1, 2, and 3, to which demurrers were interposed, which were overruled by the trial court. The appellant now insists that these counts merely state conclusions, and not facts, and do not show with that degree of certainty requisite to good pleading, when plaintiff's cause of action arose. "In cases of damages by nuisance it is considered that the injurious consequences resulting from the nuisance, rather than the act which produces the nuisance, is the cause of action, and hence it is held that the cause of action does not arise until harmful consequences occur. * * * Negligence of the defendant is not, ordinarily, an element," and, if averred, such averments may be disregarded as surplusage. Alabama Western R. R. Co. v. Wilson, 1 Ala. App. 306, 312, 55 So. 932; S. A. & M. R. R. Co. v. Buford, 106 Ala. 303, 17 So. 395. This is a rule of pleading pertinent in the analyses of the complaint in this case.

[8, 9] It seems to have been the pleader's purpose to aver in each of the counts that "noxious, unhealthful, damaging, disagreeable, and offensive odors, issuing from defendant's premises, polluted the air around and in plaintiff's dwelling, rendering it unpleasant, uncomfortable, unhealthy, and unfit for human habitation," and from this condition plaintiff suffered the damages catalogued in the complaint. These counts are not subject to the objection that they aver mere conclusions. Adler & Co. v. Pruitt, 169 Ala. 213, 225, 53 So. 315, 32 L. R. A. (N. S.) 889, 20 R. C. L. 469, par. 85. But the first count does not show, except by implication or intendment, that the noxious odors emanate from defendant's cemetery, and both the first and second counts are lacking in specific averments as to the time of the injury. They do not show, except by implication, that plaintiff's occupancy of the premises "near the cemetery" was during its ownership and control by the defendant. Numerous grounds of demurrer, and especially grounds 34 and 36, point out this defect. We are of the opinion that the court erred in overruling these demurrers to counts 1 and 2. Tallassee Falls Mfg. Co. v. First National Bank, 159 Ala. 315, 49 So. 246; Mobile, J. & K. C. R. R. Co. v. Bay Shore Lumber Co.,

158 Ala. 622, 48 So. 377; Williams v. McKissack, 125 Ala. 544, 27 So. 922; Shipman's Com. Law Pl. (2d Ed.) 389.

In Kearney v. Farrell, 28 Conn. 317, 73 Am. Dec. 677, it was held competent for witnesses who are acquainted with the effect which privies and pigsties have upon the air about them, and who had examined premises in question since the commencement of the suit, to give their opinion, *together with the facts upon which it was based*, that that the effluvia from the privy and sty constituting the alleged nuisance is calculated to make the plaintiff's house uncomfortable. In Kirchgraber v. Lloyd, 59 Mo. App. 59, where the alleged nuisance was the noxious fumes and smoke from defendant's brickkiln it was held that a witness who had operated brickkilns and lived near them, after examining the plaintiff's premises and location of defendant's brickkiln, could give his opinion as to the probable effects of the smoke and fumes on the plaintiff's premises. Wood on Nuisances (3d Ed.) § 610, lays down the rule that:

"To establish the fact of nuisance, where the question is whether the maintenance of a privy, pigsty, etc., emitting noxious stenches near another's dwelling or place of business is a nuisance, the opinion of witnesses who have personally examined the premises, and are acquainted by personal observation with the effect which such uses produce upon the air, are competent to show that effluvia from such uses must necessarily render the plaintiff's premises uncomfortable as a place of abode or business. And the same principle applies to nuisances arising from other causes, as from smoke, noxious vapors, interference with water courses, etc." Steel City Chemical Co. v. Jenkins, 17 Ala. App. 221, 84 So. 408.

In Stouts Mt. Coal & Coke Co. v. Tedder, 189 Ala. 637, 66 So. 619, where the plaintiff claimed that defendant deposited refuse from the mining camps in a creek, the waters of which carried the refuse upon plaintiff's property, it was held that a witness who had personally inspected the premises and smelled the odor, could testify what produced the odor.

[10] The plaintiff, testifying as a witness, was asked to "tell the jury as best you can what effect, if any, these odors, smells, and stenches had upon your wife," and over defendant's objection was allowed to state, "Well, just put my wife on starvation, nearly," and "My wife just failed to eat when the time came." This was error. It is not permissible for a witness without expert knowledge to state his conclusions as to the effect of noxious odors on the person of another, this was a question for the jury. Travis v. L. & N. R. R. Co., 183 Ala. 415, 62 So. 851; Central of Georgia Ry. Co. v. Clements, 2 Ala. App. 520, 57 So. 52. It was permissible for the plaintiff to show that his wife became ill while living on the premises

near the cemetery, and, if he could, by expert testimony, that the noxious odors and stenches issuing from the nuisance were calculated to produce this result, but it was eventually a question for the jury to say whether such illness was caused by the nuisance. Travis v. L. & N. R. R. Co., supra; C. of G. Ry. Co. v. Clements, supra.

[11] The fact that the wife of the witness De Witt, who lived in the same neighborhood as plaintiff, near the cemetery, was ill, should not have been admitted. This projected into the case a collateral fact, which was without value until it was established to the satisfaction of the jury that her illness resulted from the nuisance, resulting in a multiplicity of issues, with a tendency to draw the minds of the jury away from the real issues in the case.

[12] The witness Stephens gave evidence to the effect that he was a physician of eight years' experience; that he, at the request of De Witt, inspected the cemetery. "I found some of the graves open after the burial had been made for some time, after it had rained on them and loose earth had settled on them, and there was openings in them; you could see the coffins or boxes through the opening; you could see them from the top of the ground. It is hard for me to say whether they were new or old graves. From the color of the wood of the boxes, they appeared to be two or three months old." The witness was then asked to state "whether or not the tendency of that kind of burying ground would not be to allow noxious vapors and fumes from dead bodies to escape to the top of the ground." The witness was not shown to have had any experience in respect to the keeping of cemeteries or burying places, and so far as appears the jury was as competent to draw the conclusion called for by this question as the witness, and the defendant's objection thereto should have been sustained.

[13] The measure of damages recoverable by the plaintiff is the value of time lost by the plaintiff in attending members of his family, made ill by the nuisance, money expended or liabilities incurred for medicine and medical attention, the value of lost services of his wife, mental and physical annoyance and suffering endured by the plaintiff as a result of the nuisance, diminished rental value of the premises during the term of his lease, and if the nuisance was maintained in wanton disregard of plaintiff's rights the jury may award punitive damages. Birmingham Water Works Co. v. Martini, 2 Ala. App. 652, 56 So. 830; Bube v. Birmingham Railway, Light & Power Co., 140 Ala. 276, 37 So. 285, 103 Am. St. Rep. 33; Eufaula v. Simmon, 86 Ala. 515, 6 So. 47; Jefferson Fertilizer Co. v. Rich, 182 Ala. 633, 62 So. 40; Tomme v. Pullman Co., 207 Ala.

511, 93 So. 462; 20 R. C. L. 469, §§ 86, 87 (punitive damages); Yazoo M. V. R. Co. v. Sanders, 87 Miss. 607, 40 So. 163, 3 L. R. A. (N. S.) 1119; 29 Cyc. 1277. Competent evidence, showing or tending to show plaintiff sustained damages within the elements above stated, should be admitted on the trial to follow a reversal of the judgment in this case.

[14] The witness Latham merely stated that he had been chief inspector of the sanitary department of the city of Birmingham for six years. He is not shown to have had experience in the burial of the dead, and hence was not qualified to answer the question, "Were the bodies buried at the proper depth?"

[15] Assuming that Dr. Dowling qualified as an expert, his opinion at the time of the trial as to whether the cemetery was sanitary or not when he examined it, and not his conclusion at some past date, was the material inquiry.

This we believe covers the substantive law of this case and the pertinent rules of evidence necessary for another trial, and, while other questions are presented, no good could come from further treatment of them.

For the errors pointed out, the judgment of the circuit court will be reversed, and the cause remanded.

Reversed and remanded.